IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-01384-RM-BNB

JEREMY PINSON,

Plaintiff,

v.

KASDON,

Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

This matter arises *sua sponte*.  I respectfully RECOMMEND that the plaintiff, Jeremy

Pinson, be sanctioned for his abusive litigation conduct.

Mr. Pinson currently is incarcerated by the Federal Bureau of Prisons ("BOP") at the

United States Penitentiary-Administrative Maximum in Florence, Colorado ("ADX").[1]  Mr.

Pinson is an abusive filer and is well-known to the court.  He has filed approximately 40 cases in

this court over the last five years and has filed numerous cases in other federal district courts.

Mr. Pinson's abusive filing history is obvious from Attachment A to the Complaint [Doc. #1, pp.

9-14] which lists approximately 125 previous cases filed by the plaintiff.  *(Attached).*

Mr. Pinson is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915 and has been

assessed three strikes under 28 U.S.C. § 1915(g).  <u>Pinson v. Fed. Bureau of Prisons, et al.</u>, Civil

_____

[1]Mr. Pinson proceeded *pro se* in all of the cases addressed below.  Although I must
liberally construe his pleadings, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), he must comply
with the fundamental requirements of the Federal Rules of Civil Procedure and the orders and
local rules of this court.  <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).

Action No. 11-cv-02112-LTB, (D. Colo. Dec. 20, 2011) [Docs. ## 13 and 19]. Section 1915(g)

provides:

> In no event shall a prisoner bring a civil action or appeal a
> judgment in a civil action or proceeding under this section if the
> prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of
> the United States that was dismissed on the grounds that it is
> frivolous, malicious, or fails to state a claim upon which relief may
> be granted, unless the prisoner is under imminent danger of serious
> physical injury.

Mr. Pinson has brought more than three actions that were dismissed on the grounds that

they were frivolous. Pinson v. Chipi, et al., Civil Action No. 09-cv-00283-WTH-GRJ (M.D. Fla.

July 30, 2009) (dismissed for abuse of judicial process and counts as a strike under 28 U.S.C. §

1915(g)), appeal dismissed, No. 10-12235-B (11th Cir. Feb. 2, 2011) (dismissed as frivolous),

cert. denied, No. 10-11063, 2011 WL 4532284 (Oct. 3, 2011); Pinson v. Pineiro, et al., Civil

Action No. 09-cv-00244-WTH-GRJ (M.D. Fla. July 30, 2009) (dismissed for abuse of judicial

process and counts as a strike under 28 U.S.C. § 1915(g)), vol. dismissed, No. 09-14528-C (11th

Cir. Oct. 16, 2009); Pinson v. Grimes, et al., Civil Action No. 09-cv-00238-WTH-GRJ (M.D.

Fla. July 30, 2009) (dismissed for abuse of judicial process and counts as a strike under 28

U.S.C. § 1915(g)), aff'd in part, No. 09-14242, 391 F. App'x 797 (11th Cir. Aug. 9, 2010) (§

1915(g) dismissal affirmed regarding strike, but dismissal with prejudice remanded as too harsh),

cert. denied, 131 S. Ct. 527 (Nov. 1, 2010).

Therefore, in order to proceed in forma pauperis in this court, Mr. Pinson is required to

provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct

evidencing the likelihood of imminent serious physical injury." Martin v. Shelton, 319 F.3d

1048, 1050 (8th Cir. 2003) (emphasis added).  Vague or conclusory allegations of harm are insufficient.  White v. Colorado, 157 F.3d 1226, 1231-32 (10th Cir. 1998).

In spite of the section 1915(g) filing restrictions imposed on Mr. Pinson in 2011, he has continued his abusive filing tactics.  As discussed below, his filings are frivolous, malicious, and abusive.

"[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." Tripati v. Beaman, 878 F.2d 351, 353 (10th Cir. 1989) (internal citation omitted).  Even if a case is not deemed frivolous or malicious by the court, abuse of the judicial process is sufficient to impose filing restrictions.  Smith v. Krieger; 389 Fed.Appx. 789, 799 (10th Cir. 2010) (stating that "[a]lthough the district court did not consider the case before it to be frivolous, it did not need to; abuse of the judicial process suffices").  "No one, rich or poor, is entitled to abuse the judicial process."  Tripati, 878 F.2d at 353.

"Reasonable restrictions may be placed on all litigants who seek to advance repetitive causes, who file actions for obviously malicious purposes, and who generally abuse the processes."  Phillips v. Carey, 638 F.2d 207, 209 (10th Cir. 1981).  "A district court has power under 28 U.S.C. § 1651(a) to enjoin litigants who abuse the court system by harassing their opponents."  Id. at 352.  "There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances."  Id.

The restrictions placed on a litigant must be carefully tailored to assist the court "in curbing the particular abusive behavior involved."  Id. at 352.  "Injunctions restricting further

filings are appropriate where (1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and (3) the litigant receives notice and an opportunity to oppose the court's order before it is implemented."  Keyter v. 535 Members of 110th Congress, 277 Fed.Appx. 825, 827, 2008 WL 2037619, at *1 (10th Cir. May 13, 2008) (citing Tripati v. Beaman, 878 F.2d 351, 353-54 (10th Cir. 1989)).

I start with several cases assigned to me.  They are exemplary of Mr. Pinson's abusive filing behavior, including his propensity to lie and to file copious, meritless motions.

### Civil Action No. 13-cv-00104-RBJ-BNB

January 28, 2013 [Doc #5]:   A Prisoner Complaint (the "Complaint") was filed by three ADX inmates, John Does 1, 2, and 3.  Mr. Pinson is John Doe 1.  Due to the allegations of the Complaint, the case was filed under seal.[2]

March 25, 2013, through April 10, 2013 [Docs. ## 14, 15, 16, 21, 22]:   The court received several filings--purportedly signed by all three plaintiffs--including redundant motions for subpoenas, a motion to unseal the case and add plaintiffs (including inmate Mikeal Glenn Stine who is subject to strict filing restrictions in this court), and a motion for appointment of counsel.

April 16, 2013 [Doc. #24]:   The court received from John Doe 2 a letter wherein he complaining that the prison was refusing to allow him to correspond with Mr. Pinson and requesting the court's assistance in allowing him to communicate with Mr. Pinson.

---

[2]Because the case remains under seal, I do not address the allegations of the Complaint or any other sensitive material.  Instead, I generally address Mr. Pinson's abusive litigation conduct.

April 22, 2013 [Doc. #25]:   I ordered the ADX Warden to verify the plaintiff's ability to

obtain the signatures of the other two plaintiffs on materials filed by the plaintiffs in this case.   In

doing so, I stated:

> [T]he Court questions the integrity of Mr. Pinson's filings in this
> case.  Over the past six years, Mr. Pinson has initiated twenty-eight
> cases in this Court.  Mr. Pinson has filed nine of the twenty-eight
> cases, including the instant case, within the past eight months.  See
> Pinson, et al., v. No Named Defendants, No. 13-cv-00651-BNB
> (D. Colo. Filed Mar. 11, 2013) (pending initial review pursuant to
> D.C.COLO.LCivR 8.2); Hipps, et al., v. Fed. Bureau of Prisons, et
> al., No. 13-cv-00604-BNB (D. Colo. Filed Mar. 7, 2013) (pending
> initial review pursuant to D.C.COLO.LCivR 8.2); Bruce, et al., v.
> Fed. Bureau of Prisons, et al., No. 13-cv-00491-BNB (D. Colo.
> Filed Feb. 25, 2013) (pending initial review pursuant to
> D.C.COLO.LCivR 8.2); Pinson v. Fed. Bureau of Prisons, et al.,
> No. 13-cv-00749-BNB (D. Colo. Filed Feb. 25, 2013) (pending
> initial review pursuant to D.C.COLO.LCivR 8.2); Pinson, et al., v.
> Madison, et al., No. 13-cv-00157-BNB (D. Colo. Mar. 25, 2013)
> (original multi-plaintiff suit but voluntarily dismissed by Mr.
> Pinson when other plaintiff was dismissed); Pinson, et al., v.
> Berkebile, No. 12-cv-03006-MSK-BNB (D. Colo. Filed Nov. 15,
> 2012) (28 U.S.C. § 2241 action pending review on the merits);
> Pinson v. Berkebile, et al., No. 12-cv-02802-BNB (D. Colo. Filed
> Oct. 22, 2012) (pending initial review pursuant to
> D.C.COLO.LCivR 8.2); Pinson v. Berkebile, No. 12-02673-BNB
> (D. Colo. Filed Oct. 9, 2012) (28 U.S.C. § 2241 action pending
> review of Respondent's preliminary response; challenges
> twenty-three disciplinary proceedings); Pinson v. Berkebile, et al.,
> No. 12-cv-02118-LTB (D. Colo. Sept. 5, 2012) (dismissed as
> repetitious of Case No. 12-cv-01570-RPM, legally frivolous),
> appeal dismissed, No. 12-1213 (10th Cir. Feb. 26, 2013) (Mr.
> Pinson found to be subject to 28 U.S.C. § 1915(g), ordered to pay
> appellate filing fee in full, dismissed when fee not paid).  Mr.
> Pinson, in at least six of the recent nine cases, including this case,
> has attempted to include additional plaintiffs without their
> signatures and has filed conflicting pleadings.  He also voluntarily
> dismissed an action when the Court dismissed other named
> plaintiffs.
>
> Furthermore, Mr. Pinson's most recent request to unseal this case
> is an abuse of the judicial process.  In support of his original

5

request to seal the case, Mr. Pinson asserted that the information
stated in the Complaint would be detrimental to each Plaintiff and
to their families.  Now, without a concern about disclosing the
allegations in the Complaint, Mr. Pinson asks the Court to serve all
documents filed in this case on eight inmates who he has identified
as the interested parties and to unseal the case.

It is clear that Mr. Pinson has authored all of the pleadings and
other filings in this case.  Most recently in Case No.
13-cv-00749-BNB, at ECF No. 6, Mr. Pinson asserted that ADX
inmates are confined to their cells at all times.  If, as he alleges,
Mr. Pinson is confined to his cell and does not have contact with
other inmates, he could not obtain signatures from other named
Plaintiffs in each of filings in this case.  Because the authenticity
of Plaintiffs' signatures is questioned, specifically in ECF No. 15,
which contains the request to unseal this case, the request to unseal
will be denied.

April 25, 2014 [Doc. #27]:   John Doe 2 filed another letter requesting that the court

instruct the prison to permit him to communicate with Mr. Pinson.

May 6, 2013 [Doc. #35]:   John Doe 2 filed a third letter requesting that the court not

unseal the case because it would put his life in "great danger."

May 9, 2013 [Doc. #37]:   The Warden's designee responded to my order.  She stated

that Mr. Pinson had not been housed in the same housing units with John Does 2 and 3 since

January 29 and February 26, 2013, respectively, and Mr. Pinson could not have had personal

contact with John Does 2 and 3 since those dates because their units are physically separated and

inmates in one housing unit do not have contact with inmates in other housing units.

May 13, 2013 [Doc. #38]:   The court received an objection to the order directing the

Warden to verify Mr. Pinson's ability to obtain the signatures of John Does 2 and 3.  The

objection was purportedly signed by all three plaintiffs and contained declarations that were

purportedly signed by all plaintiffs.  The declarations state that each plaintiff "personally signed

6

every motion or pleading in this case." Mr. Pinson argued incredibly that "[t]wenty-two motions were pre-signed in the event Plaintiffs were separated."

June 7, 2013 [Doc. #39]:   John Doe 2 submitted a letter stating that Mr. Pinson had misrepresented John Doe 2 in this case and had filed documents that John Doe 2 had no knowledge of and had not signed.  John Doe 2 requested that the court keep the case sealed.  He further requested that he be dismissed from the case.

January 29, 2014 [Doc. #48]:   The district judge dismissed Mr. Pinson from the case after finding it "highly likely" that he had filed pleadings without the knowledge or signature of at lease one of the other two plaintiffs.

February 13, 2014 [Doc. #54]:   John Doe 3 submitted a letter asking that he be dismissed from the action because he did not sign any of the documents or motions filed in this action, and he did not authorize anyone else to file this action on his behalf.

February 18, 2014 [Doc. #55]:   The district judge dismissed the case.

## Civil Action No. 13-00749-RM-BNB

April 8, 2013 [Doc. #6]:   Mr. Pinson filed his Amended Prisoner Complaint (the "Complaint").

April 17, 2013 [Doc. #8]:   The court found that Mr. Pinson had failed to comply with a previous court order to state specific acts and dates to support his vague claims of imminent danger of serious physical harm.  Mr. Pinson was warned that the court would consider invoking additional filing restrictions against him if he failed in the future to comply with court orders.

June 25, 2013 [Doc. #15]:   Mr. Pinson was granted leave to proceed in forma pauperis in this case based on allegations that chemical agents were being deployed in close proximity to him, and he was being denied medical attention after indirect exposure to the chemicals.

July 1, 2013 [Doc. #16]:   Mr. Pinson filed his first motion for injunctive relief.  He claimed that he had been without "critical" asthma medications and that the defendants were continuing to use chemical agents near inmates with respiratory illnesses "thus causing plaintiff and other ADX inmates breathing problems that defendants refused to medically treat which could result in injury or death."  He also claimed that defendant Berkebile vacated the prison's previous policy of removing asthmatics from areas where chemical agents were going to be deployed.  He sought an order enjoining the defendants from (1) "using chemical agents upon or near any ADX inmate with athsma [sic]"; and (2) "continuing to withhold plaintiff's prescribed athsma [sic] inhalers."

July 17, 2013 [Doc. #20]:   Mr. Pinson filed a supplement to his motion for injunctive relief.  He alleged that (1) on July 14, 2013, a "use of force team was assembled to extract" an inmate from his cell; (2) the inmate's cell was located near Mr. Pinson's cell; (3) thirty minutes prior to the extraction, Mr. Pinson informed Officer Lee of his asthma; (4) Officer Lee informed the team leaders of Mr. Pinson's asthma; (5) the team leaders said "who cares, fuck him"; (6) "oleoresin capsicum was deployed into" the other inmate's cell "triggering an asthma attack in plaintiff who collapsed struggling to breathe for 20 minutes as officers stood watching"; (7) "[p]laintiff lost consciousness and later awoke being carried by staff on a stretcher" to the medical department; (8) "[w]hile plaintiff was unconscious staff caused a large gash upon plaintiff's face"; and (9) "[p]laintiff could have died."

8

September 25, 2013 [Doc. #39]:   Mr. Pinson filed an Amended Prisoner Complaint adding four plaintiffs, including Mikeal Glenn Stine.  Mr. Stine is subject to strict filing restrictions in this court.  Civil Action No. 07-cv-01839-WYD-KLM, *Recommendation of United States Magistrate Judge* . . . . [Doc. #344]; *Order Affirming and Adopting Recommendation of United States Magistrate Judge* [Doc. #350].

October 21, 2013 [Doc. #47]:   I struck the plaintiff's Amended Prisoner Complaint, stating:

> The plaintiff was granted leave to proceed in forma pauperis in this case [Doc. #15] based on certain allegations of imminent danger of serious physical injury. He may not add claims and plaintiffs by simply filing a second amended complaint.
>
> Instead, the plaintiff must file a motion seeking leave of court to amend his Amended Complaint. The motion must detail the proposed amendments; state the reasons why such amendments are necessary; and show that the proposed amendments are claims of imminent danger of serious physical injury. The plaintiff must attach the proposed amended complaint, entitled "Second Amended Prisoner Complaint," to the motion. The plaintiff may not incorporate his original or his Amended Complaint into the proposed second amended complaint. The proposed amended complaint must stand alone and contain all of the plaintiff's claims.

November 8, 2013 [Doc. #50]:   Mr. Pinson filed his second motion for injunctive relief.

November 8, 2013 [Doc. # 51]:   I set for hearing the first motion for injunctive relief.

November 14, 2013 [Doc. #55]:   I struck Mr. Pinson's second motion for injunctive relief because it sought the same relief as did the first motion for injunctive relief and supplement.  I ordered Mr. Pinson to cease filing redundant motions in this case (and all other cases), and I warned him that failure to comply with my order could result in sanctions, including dismissal of this case with prejudice.

January 21, 2014 [Doc. #68]:   I denied an "emergency" motion to compel filed by Mr. Pinson [Doc. #6] because, after filing it, Mr. Pinson resolved the issue with BOP personnel.  I ordered Mr. Pinson to cease filing unnecessary or otherwise inappropriate motions, and I warned him that failure to comply with my order would result in dismissal of this case with prejudice and/or filing restrictions.

February 7, 2014 [Doc. #77]:   I recommended that Mr. Pinson's second attempt to amend his complaint be denied, stating:

> The plaintiff seeks to amend his Amended Complaint to add eight defendants.
>
> * * *
>
> The plaintiff states the amendment is necessary for several reasons. First, he states that in the defendants' reply in support of their motion for summary judgment [Doc. #53], "defendants seek to narrow the scope of this case" to events that occurred between November 30, 2012, and February 19, 2013.  *Motion*, pp. 1-2. This lawsuit is based on the allegations of the Amended Complaint, not the defendants' reply brief.
>
> The plaintiff also claims that he needs to amend because he has "exhausted additional chemical agent incidents from July 14, 2013 to now."  Id. at p. 2.  However, the proposed second amended complaint does not address with any factual specificity incidents involving chemical agents after July 14, 2013.  The plaintiff filed an "emergency" motion for injunctive relief which addresses in detail the July 14, 2013, incident.  I held a hearing on that motion, and it already is being addressed.
>
> The plaintiff's third reason for amending is that he "recently identified all the parties involved and now seeks to add them."  Id. This assertion is patently false.  The plaintiff filed Civil Action No. 13-cv-1990-BNB on July 25, 2013.  The Complaint in that action contains the same allegations against four of the eight defendants the plaintiff seeks to add in this case.  The plaintiff does not explain why he was unable to identify the other four proposed defendants, and it is clear from his allegations against them that he knew or should have known their identities for nearly one year--he

10

alleges that they responded to his duress alarm 13 times from November 2012 to February 2013.

Finally, the plaintiff claims that his amendment will "permit consolidation of the claims in this case and No. 13-cv-1990-BNB." Id. The claims in Case No. 1990 are still under review pursuant to section 1915(g). The plaintiff may not make an end-run around section 1915(g) through an amendment in this case.

The plaintiff initiated this case almost one year ago. On March 28, 2013, I told the plaintiff [Doc. #4] that in order to state a claim he must allege with specificity the injuries he claims and how the named defendants participated in the alleged injuries. The plaintiff knew or should have known the identity of defendants he seeks to add and the claims against them for at least six months. He has had ample opportunity to provide the court with a proper complaint, and his excuses for waiting until now are without merit. The plaintiff is engaged in abusive litigation tactics, and the motion to amend should be denied on the grounds of undue delay, bad faith, and a dilatory motive on the part of the plaintiff.

I ordered Mr. Pinson to cease filing inappropriate motions in this case (and all other cases). I warned him that failure to comply with my order would result in my recommendation to dismiss this case with prejudice and could result in the imposition of filing restrictions.

February 7, 2014 [Doc. #78]:   After an evidentiary hearing, I recommended that Mr. Pinson's first motion for injunctive relief be denied. Based on the testimony and evidence, I found the following facts:

1.   On July 14, 2013, BOP officials deployed chemical agents to extract inmate Jeffrey Clark from his cell. Mr. Clark's cell was located near Mr. Pinson's cell.

2.   After the extraction of Mr. Clark, prison officials responded to a duress alarm that Mr. Pinson had activated within his cell. Mr. Pinson was secured, taken to the medical department, and examined by medical personnel. He was conscious; his lung sounds were clear upon auscultation with a stethoscope; his oxygen saturation level was 95% on room air (without

11

supplemental oxygen); and his pulse rate, respiration rate, and blood pressure were normal.  Mr. Pinson did not receive any type of emergency intervention or medications as a result of the episode.

3.   Mr. Pinson's physician, Dr. Allred, has found no evidence in Mr. Pinson's medical records that Mr. Pinson has ever suffered from a severe asthma attack, and he has no grounds to believe that Mr. Pinson actually suffers from asthma.  He believes that Mr. Pinson self-reported a history of asthma to an attending doctor in 2011, and the attending doctor added the diagnosis to Mr. Pinson's "problem list" and prescribed two asthma medications as a result of the self-report.

4.   In February 2013, Dr. Allred cleared Mr. Pinson for exposure to chemical extraction agents, and he documented the clearance in Mr. Pinson's medical records.

5.   If Mr. Pinson had suffered a severe asthma attack on July 14, 2013, he would have exhibited obvious respiratory distress; audible wheezing; elevated blood pressure; and a diminished oxygen saturation level (below 93).  If he had suffered an asthma attack severe enough to cause him to lose consciousness, as Mr. Pinson claims, he would not have recovered without the administration of medications and probably would have died.

6.   The ADX has never had a policy which called for the removal of inmates diagnosed with asthma prior to the deployment of extraction chemicals.

7.   Mr. Pinson did not suffer an asthma attack with loss of consciousness as a result of chemical extraction agents on July 14, 2013.

I ordered Mr. Pinson to cease filing inappropriate motions in this case (and all other cases), and I warned him that failure to comply with my order would result in my

recommendation to dismiss this case with prejudice and could result in the imposition of filing restrictions.

### Civil Action No. 13-01384-RM-BNB

May 28, 2013 [Doc. #1]:   Mr. Pinson filed his Prisoner Complaint (the "Complaint").

June 25, 2013 [Doc.#5]:   The Complaint contained many legally frivolous allegations and allegations that did not comply with the requirements of section 1915(g).  Those allegations were dismissed.  Mr. Pinson was granted leave to proceed *in forma pauperis* [Doc. #4] based on allegations that the defendant, Dr. Kasdon, (1) disconnected his sink and toilet for at least four days; (2) confiscated Mr. Pinson's asthma inhalers causing breathing difficulties and an inability to eat; and (3) sexually assaulted him.

July 1, 2013 [Doc. #8]:   Mr. Pinson filed an amended complaint.

July 29, 2013 [Doc. #12]:   I struck the amended complaint because Mr. Pinson did not file a motion seeking leave to amend as required by Fed.R.Civ.P. 15.  I noted that the requirements of Rule 15 are especially important in this case because of the restrictions imposed on Mr. Pinson by section 1915(g).

August 14, 2013 [Doc. #16]:   Mr. Pinson filed a motion for reconsideration of the order striking his amended complaint.  The motion did not address the requirements of Rule 15.  Instead, Mr. Pinson accused me of "obviously" not reading his amended complaint and "inexplicably" prohibiting him from filing an amended complaint.

September 25, 2013 [Doc. #20]:   Mr. Pinson filed a motion requesting that several inmates be permitted to intervene.  Mr. Pinson referred to an attached proposed amended complaint, but there was no amended complaint attached to the motion.

13

October 2, 2013 [Doc. #22]:   Mr. Pinson filed his first motion for injunctive relief which was captioned as a motion for a protective order.

October 7, 2013 [Doc. #27]:   Mr. Pinson filed a second motion for injunctive relief.

October 9, 2013 [Doc. #30]:   An ADX inmate, Mikeal Glenn Stine, filed the first of several letters he submitted in the case.  This letter is an unsworn statement that an ADX official told Mr. Pinson that he would no longer be able to send or receive mail.   Mr. Stine is subject to strict filing restrictions in this court, in part because of his "history of making false statements." Civil Action No. 07-cv-01839-WYD-KLM, *Recommendation of United States Magistrate Judge* . . . . [Doc. #344], p. 20; *Order Affirming and Adopting Recommendation of United States Magistrate Judge* [Doc. #350].

October 15, 2013 [Doc. #32]:   Mr. Pinson filed a motion for appointment of counsel.  In support of his motion, he stated that (1) he had been placed on restricted mail status at ADX, and (2) the proposed amended complaint attached to his motion to intervene had been stolen by BOP employees.  He further stated that he "cannot litigate effectively if the defendant and those who aid and abet her are permitted to steal documents mailed to this court . . . ."

October 17, 2013 [Doc. #34]:   Mr. Pinson filed a third motion for injunctive relief.  He alleged that on September 27, 2013, the defendant refused to provide him with medical care and threatened to have him murdered in retaliation for filing lawsuits against her and other BOP staff.

October 21, 2013 [Doc. #41]:   I set Mr. Pinson's third motion for injunctive relief for an evidentiary hearing to occur on January 14, 2014.

October 21, 2013 [Doc. #43]:   I denied the motion for appointment of counsel because Mr. Pinson did not meet the requirements set forth in Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995).  In addition, I noted that Mr. Pinson's "restricted status has not interfered with his ability to litigate this case.  Indeed, he has filed five motions since his restricted mail status became effective on September 17, 2013."  I also denied the motion to intervene, stating that it appeared to have been filed in the wrong case because it referred to claims and documents in Civil Action No. 13-cv-00749-RM-BNB.  Indeed, Mr. Pinson filed in 13-cv-00749 the proposed amended complaint which he referred to in his motion to intervene, and which he later accused BOP officials of stealing.

October 22, 2013 [Doc. #44]:   I recommended that Mr. Pinson's first two motions for injunctive relief [Docs. ## 22 and 27] be denied because Mr. Pinson failed to address any of the requisite factors set forth in Lundgrin v. Claytor, 619 F.2d 61 (10th Cir. 1980).

November 4, 2013 [Doc. #52]:   Mr. Pinson filed a motion requesting that 10 inmates be subpoenaed to testify at the hearing on his third motion for injunctive relief.  He stated that the witnesses will testify that the defendant "told them the plaintiff was a snitch and incited violence against the plaintiff" or they were "set up, assaulted, or retaliated against at ADX by ADX staff and defendant in connection with a lawsuit or grievance against staff."

November 12, 2013 [Doc. #58]:   I denied Mr. Pinson's motion to subpoena 10 inmates stating that (1) information regarding other inmates "is not relevant to the limited issues which are the subject of the hearing," and (2) "[a] subpoena may be issued only if the request is reasonable."  I informed Mr. Pinson that he "must provide a detailed description of the expected testimony of any witness he seeks to subpoena and explain why the testimony is relevant to

15

subject matter of the January 14th hearing." I ordered Mr. Pinson to cease filing inappropriate motions, and I warned him that failure to comply with my order could result in sanctions, including dismissal of this case with prejudice.

November 15, 2013 [Doc. #63]:   Mr. Pinson filed a fourth motion for injunctive relief.

December 20, 2013 [Doc. #81]:   I issued an order denying several motions filed by Mr. Pinson.  In one of the motions [Doc. #60], Mr. Pinson claimed that the defendant and other ADX officials were withholding his mail to "send a message" to him.  I found his allegations incredible because both he and Mr. Stine had filed responses to some of the mail that was allegedly withheld.  In another motion [Doc. #63], Mr. Pinson alleged that defendant's counsel had authorized the prison to withhold a piece of mail containing defendant's response to one of Mr. Pinson's motions for injunctive relief.  I found Mr. Pinson's allegations incredible because Mr. Pinson knew the contents of the piece of mail and Mr. Stine had filed a letter responding to one of the arguments in the piece of mail.  In a different motion [Doc.#67], Mr. Pinson moved for reconsideration of my order denying his request to subpoena ten witnesses.  I denied the motion because he failed to follow my order to provide a detailed description of the expected testimony of each witness.

I ordered Mr. Pinson to cease filing inappropriate motions in this case (and all other cases), and I warned him that his failure to comply with this requirement would result in my recommendation to dismiss this case with prejudice, and could result in the imposition of filing restrictions.

December 20, 2013 [Doc. #82]:   I recommended that Mr. Pinson's fourth motion for injunctive relief be denied because "[d]espite my [previous] detailed recitation of the

requirements the plaintiff must meet to establish a right to injunctive relief, the plaintiff's current

Motion for injunctive relief does not discuss any of them."  I ordered Mr. Pinson to cease filing

inappropriate motions in this case (and all other cases), and I warned him that his failure to

comply with this requirement would result in my recommendation to dismiss this case with

prejudice, and could result in the imposition of filing restrictions.

January 14, 2014:   I held a hearing on Mr. Pinson's third motion for injunctive relief.

During Mr. Pinson's examination of the defendant, he asked her if she (1) told inmate Wallace

Allen that Mr. Pinson was a snitch, and (2) encouraged inmate Wallace Allen to assault Mr.

Pinson.  *Transcript of January 14, 2014 Hearing* [Doc. #96], 98:9-17.

January 15, 2014 [Doc. #93]:   I denied Mr. Pinson's motions for sanctions [Docs. ##73

and 78].  In doing so, I stated "[t]he Motions are inappropriate. The plaintiff seeks sanctions

against a nonparty for allegedly tampering with his mail.  Relief against a nonparty is not

available.  Moreover, the plaintiff may not use this lawsuit to raise allegations that should be

raised first through the prison's administrative remedy process and then, if appropriate, as a

separate lawsuit."  In addition, I ordered Mr. Pinson to cease filing inappropriate motions in this

case (and all other cases), and I warned him that his failure to comply with this requirement

would result in my recommendation to dismiss this case with prejudice, and could result in the

imposition of filing restrictions.

February 7, 2014 [Doc. #97]:   The court received a letter from ADX inmate Wallace

Allen.  Mr. Allen swore under penalty of perjury that all of his communications with Dr. Kasdon

have been about Mr. Allen's mental health issues and that any allegations by Mr. Pinson that Dr.

Kasdon solicited Mr. Allen to kill Mr. Pinson are false.

February 7, 2014 [Doc. #99]:   After a hearing on the plaintiff's third motion for injunctive relief, I recommended that the motion be denied, stating:

> The testimony of Dr. Kasdon and Officers Manes and Shockey was credible.  The plaintiff's allegations and testimony, however, were wholly incredible.  Moreover, his filing of the Emergency Motion constitutes abusive litigation conduct.
>
> In particular, the initial statements by the plaintiff and Mr. Stine indicated that Dr. Kasdon was outside of the plaintiff's cell door when she allegedly refused to provide treatment and threatened to have him murdered.  At the hearing, by contrast--after the plaintiff viewed the video tapes which showed that Dr. Kasdon neither stopped at the plaintiff's cell nor spoke to him while she was making her rounds--the plaintiff changed his story and testified that Dr. Kasdon made the statements while she was in front of the neighboring cell.  Id. at 6:13-25.  The plaintiff's testimony was self-serving and unbelievable, especially in light of all of the evidence to the contrary.

In addition, I ordered Mr. Pinson to cease filing inappropriate motions in this case (and all other cases), and I warned him that his failure to comply with this requirement would result in my recommendation to dismiss this case with prejudice, and could result in the imposition of filing restrictions.

February 28, 2014 [Doc. #105]:   The district judge overruled Mr. Pinson's objections and adopted all of the recommendations.  The district judge stated that "the frequency of Plaintiff's filings, combined with the testimony at the hearing before Judge Boland, is more than adequate support for Judge Boland's characterization" of the third motion for injunctive relief as abusive litigation conduct.

## Summary of Other Cases Filed in this Court

Many of the other cases filed in this court are applications for a writs of habeas corpus pursuant to 28 U.S.C. § 2241 which challenge the due process provided in disciplinary proceedings against Mr. Pinson.  Although the basic law regarding due process and prison disciplinary proceedings is repeated to Mr. Pinson *ad nauseam*, he continues to file section 2241 applications which are denied for failure to allege a due process violation.[3]  In addition, many of these cases were dismissed because Mr. Pinson repeatedly failed to exhaust his administrative remedies before filing the applications.  Numerous cases were voluntarily dismissed by Mr. Pinson shortly after they were filed.

Civil Action No. 07-cv-02420-MSK-BNB:   Mr. Pinson voluntarily dismissed this case three months after filing it.  His motion to voluntarily dismiss was filed after the issuance of recommendations to deny his motions for default judgment and injunctive relief.

---

[3] The law regarding due process requirements in prison disciplinary proceedings is not complex:

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Superintendent, Mass. Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff, 418 U.S. at 563-67).  In addition, "revocation of good time does not comport with the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record."  Id., at 565 (internal citation and quotation marks omitted).

Civil Action No. 08-cv-00130-ZLW:   Mr. Pinson voluntarily dismissed this case less than two months after filing it.

Civil Action No. 08-cv-00177-ZLW:   Mr. Pinson voluntarily dismissed this case less than one month after filing it.

Civil Action No. 08-cv-01023-MSK-BNB:   Mr. Pinson voluntarily dismissed this case nine months after filing it.

Civil Action No. 09-cv-00353-ZLW:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  At the time, Mr. Pinson was incarcerated in a Florida prison.  Because applications pursuant to § 2241 must be filed in the district where the prisoner is confined, the application was transferred to the United States District Court for the Middle District of Florida.

Civil Action No. 10-cv-1377-REB-MJW:   This action contains 177 docket entries. Many of the entries are related to motions filed by Mr. Pinson and denied by the court, as well as an appeal by Mr. Pinson that the circuit court dismissed for lack of prosecution.  All of the claims against the six defendants were dismissed with prejudice because they were barred by the statute of limitation.

Civil Action No. 10-cv-02456-ZLW:   This action was dismissed based on Mr. Pinson's failure to follow the court's order to either pay an initial partial filing fee or show cause why he had no assets or no means by which to pay the fee (by submitting a certified inmate trust fund account statement).  His appeal to the circuit court was dismissed for failure to pay the circuit court's filing fee, and the appeal was recorded as a strike pursuant to 28 U.S.C. § 1915(g).

Civil Action No. 11-cv-00768-LTB:   Mr. Pinson voluntarily dismissed this case less than five months after filing it.

Civil Action No. 11-cv-01333-WYD:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted (1) a denial of due process rights in two different disciplinary proceedings; (2) retaliation for filing a federal action; and (3) a violation of the Administrative Procedures Act (APA).  The retaliation and APA claims were dismissed because they challenged conditions of confinement rather than the execution of a sentence (as required in a habeas action).  In addition, because the plaintiff failed to assert a violation of his due process rights, the application was denied and the action was dismissed.  On appeal, the circuit court denied Mr. Pinson's motion to proceed *in forma pauperis* because he failed to raise reasoned, non-frivolous arguments.  The appeal was dismissed because Mr. Pinson did not pay his filing fee.

Civil Action No. 11-cv-01334-WYD:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his due process rights were violated in four separate disciplinary proceedings.  His challenge to one of the disciplinary proceedings was dismissed as an abuse of the writ because he had challenged it in a previous § 2241 action in Florida (where it was denied on the merits).  In addition to dismissing the challenge as an abuse of the writ, the district judge characterized the claim as borderline malicious and stated: "Mr. Pinson is warned that future filings in this Court found to be malicious will subject him to filing restrictions in addition to any 28 U.S.C. § 1915(g) restrictions that currently apply to him."  The remaining claims were dismissed because Mr. Pinson failed to exhaust administrative remedies regarding two of them and failed to show a due

21

process violation regarding the third.  The district judge noted that Mr. Pinson has a litigious

history; he had filed nineteen § 2241 actions over the past two years; and "[b]etween July 2,

2007, and June 8, 2011, he was convicted of thirty-three infractions, which include an attempted

killing, five assaults, three attempted assaults, three fire settings, six possessions of a weapon, an

act of taking a hostage, a threat of bodily harm, two acts of destroying property, six less serious

assaults, two attempted less serious assaults, two refusals to obey, and an act of insolence."  On

appeal, the circuit court denied Mr. Pinson's motion to proceed *in forma pauperis* because he

failed to raise reasoned, non-frivolous arguments.  The appeal was dismissed because Mr. Pinson

did not pay his filing fee.

Civil Action No. 11-cv-01965-WYD:  Mr. Pinson filed an application for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his due process rights were

violated in three separate disciplinary proceedings.  The court found that there was no violation

of Mr. Pinson's due process rights in any of the proceedings.  The application was dismissed

with prejudice.  The circuit court affirmed.

Civil Action No. 11-cv-02088-WYD:   Mr. Pinson filed an application for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his due process rights were

violated in four separate disciplinary proceedings.  The court found that several of his claims

were legally frivolous and denied the remaining claims because Mr. Pinson failed to allege a

violation of his due process rights.  The application was dismissed with prejudice.  On appeal,

the circuit court denied Mr. Pinson's motion to proceed *in forma pauperis* because he failed to

raise reasoned, non-frivolous arguments.  The appeal was dismissed because Mr. Pinson did not

pay his filing fee.

    <u>Civil Action No. 11-cv-02112-LTB</u>:  Mr. Pinson voluntarily dismissed this Prisoner Complaint four months after filing it.  He then appealed several orders of the court.  The circuit court required Mr. Pinson to pay the filing fee, which he did not.  The appeal was dismissed based on Mr. Pinson's failure to pay the fee.

    <u>Civil Action No. 11-cv-02955-WYD</u>:  Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his due process rights were violated in two separate disciplinary proceedings.  His challenge to one of the proceedings was dismissed because it had been raised in a previous section 2241 action.  Mr. Pinson was told that "a repeated challenge of the same claim borders on malicious prosecution," and he was again warned that "future filings in this Court found to be malicious will subject him to filing restrictions in addition to any 28 U.S.C. § 1915(g) restrictions that currently apply to him."  His challenge to the other proceeding was denied for lack of merit, and the application was dismissed with prejudice.

    <u>Civil Action No. 11-cv-03346-LTB</u>:  Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his due process rights were violated in one disciplinary proceeding.  The application was denied and the action was dismissed with prejudice as time-barred under 28 U.S.C. § 2244(d)(1)(D).  Mr. Pinson did not appeal the dismissal.

    <u>Civil Action No. 12-cv-00628-LTB</u>:  Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that he was being excluded from the Residential Drug Abuse Program ("RDAP").  The application was dismissed because Mr. Pinson's claim is not cognizable under section 2241.  The circuit court affirmed the dismissal

without prejudice.  The circuit court also found that the plaintiff could not invoke the RDAP because it applies only to prisoners who were convicted of nonviolent offenses.  Mr. Pinson was convicted of violent crimes.

Civil Action No. 12-cv-02118-LTB:   The plaintiff filed a Prisoner Complaint alleging violations of his constitutional rights.  The court dismissed the Complaint because it was precluded by 28 U.S.C. § 1915(g) and because it asserted claims identical to claims being addressed in another pending federal lawsuit.  The court stated that the action was frivolous, malicious, and an abuse of the judicial process.  Mr. Pinson was warned that if he continued to abuse the judicial process, the court would consider other sanctions in addition to his section 1915(g) filing restrictions.  The circuit court denied Mr. Pinson's motion to proceed *in forma pauperis* because he failed to raise reasoned, non-frivolous arguments.  The appeal was dismissed because Mr. Pinson did not pay his filing fee.

Civil Action No. 12-cv-02585-RPM:   Mr. Pinson and Mr. Stine filed a Motion for Joinder, Leave to Intervene and Supplement in the case of another inmate's federal habeas claim. Their motion was denied because the relevant legal and factual questions were "exclusively limited to deciding" the other inmate's habeas claim.

Civil Action No. 12-cv-02673-BNB:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his due process rights were violated in 37 separate disciplinary proceedings.  Fourteen of the challenges have been dismissed because they have been raised in prior section 2241 actions.  The remaining challenges are still pending.

Civil Action No. 12-cv-02802-LTB:   Mr. Pinson sued 18 named defendants and five John Doe defendants in this prisoner civil rights action.  The court found that Mr. Pinson failed to allege imminent danger of serious physical injury pursuant to 28 U.S.C. § 1915(g).  The action was ultimately dismissed based on Mr. Pinson's failure to follow the court's order to either pay an initial partial filing fee or show cause why he had no assets or no means by which to pay the fee (by submitting a certified inmate trust fund account statement).  Although Mr. Pinson appealed the dismissal of his case, the appeal was dismissed for lack of prosecution.

Civil Action No. 12-cv-03006-RM:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted 12 claims alleging that his due process rights were violated in a disciplinary proceeding.  The application was dismissed with prejudice because Mr. Pinson's claims lacked merit.

Civil Action No. 13-cv-00157-LTB:   Mr. Pinson voluntarily dismissed this case two months after filing it and after he was ordered to amend his complaint to state specific facts of ongoing serious physical injury pursuant to 28 U.S.C. § 1915(g).

Civil Action No. 13-cv-00491-WJM-CBS:   Mr. Pinson attempted to file a Prisoner Complaint with another inmate.  His claims were severed from the case because they did not arise out of the same transaction or occurrence and lacked a common question of law or fact.

Civil Action No. 13-cv-00604-LTB:   Mr. Pinson, Mr. Charles Hipps, and two other plaintiffs filed a Prisoner Complaint without paying the filing fee or submitting motions and affidavits to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  In addition, they failed to complete Section E of the court's complaint form.  They were ordered to cure those deficiencies, but failed to do so.  The Prisoner Complaint was dismissed without prejudice.  The plaintiffs

appealed, but the appeal was dismissed for lack of prosecution because they failed to pay the appellate filing fee.

Civil Action No. 13-cv-00651-LTB:   Mr. Pinson and Charles Hipps filed a Prisoner Complaint without paying the filing fee or submitting motions and affidavits to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. In addition, they failed to complete Section E of the court's complaint form. They were ordered to cure those deficiencies, but failed to do so. The Prisoner Complaint was dismissed without prejudice. Mr. Pinson appealed the dismissal. The appeal was dismissed for lack of prosecution because Mr. Pinson failed to pay the appellate filing fee.

Shortly after Mr. Pinson filed his Notice of Appeal, the court received a letter from Mr. Hipps which states that he had been receiving mail regarding several lawsuits with his name "attached to them"; he had not filed any motions or law suits and did not have any knowledge of them; he had never filed any kind of lawsuit against anyone in this district; and someone was forging his name without his knowledge or consent. He requested that his name be removed from those cases.

Civil Action No. 13-cv-01383-BNB:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asserted that his due process rights were violated in a disciplinary proceeding. The application is pending.

Civil Action No. 13-cv-01567-BNB:   Mr. Pinson filed a Prisoner Complaint and an "emergency" motion for preliminary injunction. He also sought an extraordinary writ of mandamus in the circuit court. In denying Mr. Pinson's request to proceed *in forma pauperis* because Mr. Pinson failed to allege that he was in imminent danger of serious physical injury as

required by section 1915(g), the district judge noted that "[s]ince November 2007, Mr. Pinson

has filed forty-three cases in this Court; and since September 2005, he has filed at least 136 cases

in various other federal district courts, along with 64 appeals in seven different circuits"; "[s]ince

June 13, 2013, when he filed this case, Mr. Pinson has initiated in this Court five additional

prisoner complaints and seven habeas actions"; and "since June 13, 2013, Mr. Pinson has

initiated twelve actions in several other federal district courts."

Civil Action No. 13-cv-01953-LTB:   Mr. Pinson filed an application for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241 challenging unidentified disciplinary proceedings.  He was

ordered to file an amended application which identified the specific disciplinary proceedings and

how his rights were violated in each disciplinary proceeding.  He did not comply, and the action

was dismissed without prejudice.  Mr. Pinson appealed the dismissal.  The circuit court affirmed

the dismissal.

Civil Action No. 13-cv-01990-LTB:   Mr. Pinson voluntarily dismissed this case six

months after filing it.  In the order of dismissal, the court described Mr. Pinson's history of

voluntary dismissals and unexhausted claims as follows:

> Mr. Pinson has a history of filing voluntary dismissals and
> unexhausted claims in many of his cases.  Since 2007, Mr. Pinson
> has filed at least 136 civil cases in various federal district courts.
> Approximately forty-three actions have been filed in this Court, of
> which twenty-three are prisoner complaints.  In thirty-one of the
> 136 cases, Mr. Pinson opted to voluntarily dismiss the case.  (See
> Attached Appendix).  In several of these cases the request for
> voluntarily dismissal was after the case had proceeded through
> briefing on a motion to dismiss and several requests to amend had
> been filed.  In other cases, the request to dismiss was after a
> decision was entered denying a motion for injunctive relief.  In a
> few cases, the dismissal was because the case was going to be
> dismissed for failure to exhaust, for failure to state a claim, or as
> legally frivolous.  In Pinson v. Whetsel, et al., No. 06-cv-01372-F

(W.D. Okla. Feb. 21, 2007), Mr. Pinson conceded, after a motion for injunctive relief was denied, that he elected to dismiss the case because he did not want to acquire a strike.

Mr. Pinson's voluntary dismissal in this action, like many of the previous voluntary dismissals he has filed, is done with high disregard for the integrity of the federal judiciary system.  Mr. Pinson has asserted previously in this Court that he is well versed on how to file and exhaust his administrative remedies.  See Pinson v. Davis, No. 11-cv-00608-WYD, ECF No. 15 at 6 (D. Colo. March 10, 2011).  Mr. Pinson also acknowledges he acts as a jailhouse lawyer, see Pinson v. Fed. Bureau of Prisons, et al., No. 11-cv-00768-LTB.  Mr. Pinson's professed knowledge of how to exhaust administrative remedies, and the fact that on at least four occasions he has had a complaint dismissed for failure to exhaust, see Pinson v. St. John, et al., No. 10-cv-01832-RBP-HGD (N.D. Ala. Feb. 25, 2013); Pinson v. Fox, No. 07-cv-00646-MAC-ESH (E.D. Tex. Feb. 5, 2008); Pinson v. Fe. Bureau of Prisons, et al., No. 07-cv-00346-RCKFG (E.D. Tex. Aug. 2, 2007); and Pinson v. Watkins, et al., No. 06-cv-00323-F (W.D. Okla. May 9, 2007), calls into question his honesty and motive for filing unexhausted claims in federal district courts.

Civil Action No. 13-cv-02681-BNB:  Mr. Pinson filed a Prisoner Complaint alleging that seven defendants were deliberately indifferent to his medical needs.  In denying Mr. Pinson's motion to proceed *in forma pauperis*, the district judge addressed Mr. Pinson's abusive filing behavior:

First, the Court will discuss Mr. Pinson's history of abusive litigation in federal courts. Between October 22, 2012, and October 2, 2013, when he initiated this case, Mr. Pinson filed eleven prisoner complaints.  See Attach. 1 to Order.  Mr. Pinson also initiated three prisoner complaints after filing this case; two of the cases are pending initial review.  See Attach. 2 to this Order.  Finally, since October 22, 2012, until the filing of this action, Mr. Pinson initiated at least five prisoner complaints in several other federal district courts.  See Attach. 3 to Order.

In two of the eleven complaints filed in this Court, Mr. Pinson either, after asserting imminent danger and filing an emergency motion for preliminary injunction, voluntarily dismissed the action,

see No. 13-cv-00157-LTB at ECF Nos. 1, 9 and 14, or caused over a two-month delay in processing the action, which raised questions regarding the veracity of Mr. Pinson's claims, see No. 12-cv-02802-LTB at ECF No. 42.  Three of Mr. Pinson's complaints were drawn to a district judge for a review of the merits, including No. 13-cv-00104-RBJ-BNB, No. 13-cv-00749-RM-BNB, and No. 13- 1384-RM-BNB.

Mr. Pinson's propensity to engage in abusive litigation conduct and to present unbelievable claims was established in Case No. 13-cv-01384-RM-BNB, when Judge Moore found adequate support for this characterization based on the frequency of Mr. Pinson's filings and the testimony at the hearing Magistrate Judge Boland held on January 14, 2014. . . .

Mr. Pinson's truthfulness also was called into question in No. 13-cv-00104-RBJ-BNB, when Judge Jackson dismissed Mr. Pinson from the action for submitting pleadings that contained signatures of coplaintiffs who asserted they did not sign the pleadings. See No. 13-cv-00104-RBJ-BNB at ECF No. 48.

Finally, in No. 13-cv-00749-RM-BNB, Magistrate Judge Boland held a hearing January 22, 2014, and entered a recommendation regarding Mr. Pinson's motion for injunctive relief to enjoin BOP staff from deploying extraction chemicals near his cell, because of his asthmatic condition and the asthma attacks he has had due to previous deployments. No. 13-cv-00749 at ECF Nos. 69 and 78. In the recommendation that is pending review by District Judge Moore, Mr. Pinson's testimony and the testimony of his witness were found to be incredible regarding Mr. Pinson's asthma attack when extraction chemicals were used. ECF No. 78 at 6.

In this case, pursuant to his § 1915(g) restrictions, Mr Pinson is required to provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (emphasis added). Vague or conclusory allegations of harm are insufficient. White v. Colorado, 157 F.3d 1226, 1231-32 (10th Cir. 1998). Mr. Pinson claims are conclusory and vague and fail to state with specificity the injuries he has incurred and what named Defendants specifically have done to cause serious physical injury or show a pattern of misconduct.

Mr. Pinson, therefore, has initiated three or more actions that count as strikes pursuant to 28 U.S.C. § 1915(g) and he is not under imminent danger of serious physical injury with respect to the asserted claims against named Defendants in this action. Because Mr. Pinson is aware of the pleading standard he must meet for the Court to waive the 28 U.S.C. § 1915(g) filing restriction, see Nos. 13-cv-01384-RM-BNB; No. 13-cv-00749-RM-BNB; 12-cv-02802-LTB; 11-cv-02112-LTB; 11-cv-00768- LTB, the Court finds no basis for directing Mr. Pinson to show cause why he should not be denied leave to proceed pursuant to § 1915. Pursuant to § 1915(g) he is precluded from bringing the instant action in forma pauperis against these Defendants and will be denied leave to proceed pursuant to 28 U.S.C. § 1915.

The Court also takes notice of the Administrative Remedy Generalized Retrieval Report that Warden Berkebile submitted in Pinson v. Berkebile, No. 14-cv-00423-BNB, ECF No. 10-4 (D. Colo. Filed Feb. 14, 2014). The validity of the Report is substantiated by Benjamin J. Brieschke. Id. at ECF No. 10-1. Mr. Brieschke attests that each formal complaint by an inmate is logged into the SENTRY database and that since November 29, 2012, (to February 10, 2014), Mr. Pinson has filed seventy-eight complaints or appeals. Id. A review of the Report shows that Mr. Pinson filed a remedy request and appeal requesting a need for a CPAP because he has sleep apnea. Id. at ECF No. 10- 4 at 2-3. But even this remedy request does not specifically address any of the claims he raised in this action.

From November 29, 2012, through February 10, 2014, Mr. Pinson, however, did challenge the following: (1) his ability to correspond with other inmates (multiple times); (2) delay of special visit request; (3) rejection of outgoing correspondence (multiple times); (4) rejection of publications (multiple times); (5) no participation in "team"; (6) housing assignment; (7) denial of legal visits; (8) staff misconduct; (9) mail restriction; (10) classification; (11) assault by another inmate; (12) denial of television and of general population placement; (13) disciplinary proceedings (multiple times); (14) exposure to OC; (15) retaliation and discrimination (multiple times); (16) denial of cold weather gloves; (17) denial of BP-9 forms (one occasion); and (18) no transfer to Stages Program and psychological treatment. Only one of the remedy requests was a complaint that he had been denied a BP-9 form.

Contrary to Mr. Pinson's assertion that he has exhausted his administrative remedies regarding his epilepsy, hypertension, obesity, and episodes of SVT conditions, the Administrative Remedy Report submitted in Case No. 14-cv-00423-BNB does not list any entries confirming Mr. Pinson's exhaustion of the claims he raises in this action. Mr. Pinson has been able to submit seventy-eight requests, including new remedy requests and appeals since November 2012. He also has asserted previously in this Court that he is well versed on how to file administrative remedies, see Pinson v. Davis, No. 11-cv-00608-WYD, ECF No. 15 at 6 (D. Colo. March 10, 2011). But yet there are no entries in the Report indicating that Mr. Pinson attempted to file any remedy requests complaining about his ongoing epilepsy, hypertension, obesity, and episodes of SVT conditions. In view of Mr. Pinson's repeated lack of candor, even if he were to assert now that he was denied the proper forms to challenge his alleged issues, like he has done in previous cases, his claim would be incredible.

Civil Action No. 13-cv-02821-LTB: Mr. Pinson and Mr. Stine filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which they challenged the validity of their convictions and sentences in the United States District Court for the Southern District of Texas. Specifically, they challenged the Special Administrative Measures (SAMs) imposed by the BOP. The court removed Mr. Stine and opened a separate case for him. Mr. Pinson's application was dismissed because it challenged the conditions of his confinement rather than the execution of a sentence (as required in a habeas action). Mr. Pinson appealed the dismissal. The circuit court affirmed the dismissal and ordered Mr. Pinson to pay the appellate filing fee.

Civil Action No. 13-cv-03050-LTB: Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 but did not pay the filing fee or submit a request to proceed in forma pauperis. Mr. Pinson was ordered to either to pay the $5.00 filing fee or in the alternative to submit a request to proceed pursuant to 28 U.S.C. § 1915 on a proper form along with a certified account statement showing the current balance in his trust fund account. He was

warned that his case would be dismissed if he did not cure the deficiencies within 30 days.  Mr.

Pinson failed to cure the deficiencies, and his case was dismissed without prejudice.  He did not

appeal the dismissal.

Civil Action No. 13-cv-03138-LTB:   Mr. Pinson voluntarily dismissed this Prisoner

Complaint case less than two months after filing it.

Civil Action No. 13-cv-03252-BNB:   Mr. Pinson filed an application for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241 challenging five disciplinary proceedings.  The application

is pending.

Civil Action No. 14-cv-00249-WJM-BNB:   This action was filed by ADX inmate James

Van Noy.  Mr. Van Noy was granted leave to proceed *in forma pauperis* and ordered to pay an

initial partial filing fee of $7.00.  In addition, Mr. Van Noy's custodian was ordered to disburse

from Mr. Van Noy' s prison account monthly payments of 20% of the preceding month's income

credited to this prison account until the total filing fee of $350.00 was paid.

Less than two months after filing the case, Mr. Van Noy filed a "Motion to Terminate

this Case and Apologize to Court."  The motion states:

> 1)   Inmate Van Noy is a mentally ill prisoner with limited
> education.
>
> 2)   Inmate Van Noy is suffering from all of these symptoms but
> will forego this motion and attempt to resolve via Administrative
> Remedy.
>
> 3)   Inmate Van Noy was coerced into this filing by Inmate Jeremy
> Pinson . . . and wasn't aware of consequential fees that may
> accrue.
>
> 4)   Inmate Van Noy cannot afford to pay 350.00 for this motion.

5)   Inmate Van Noy would like to pay the $7.00 filing fee for courts troubles, out of respect for this court.

6)   Inmate Van Noy isn't aware of what was really being done by Inmate Pinson, and requests that Inmate Pinson be moved away from him and several others.  (See exhibit 1 Declaration by Richard McBee)

7)   Inmate Van Noy merely followed Pinson's orders.

Conclusion

Mr. Van Noy was given what to write by Pinson.  Inmate Van Noy was told to rewrite everything (see exhibit 2 Pinson's actual documents given to Inmate Van Noy to copy and file, which he did), so it would be in his handwriting and not expose Pinson.

Mr. Van Noy is truly sorry for this undo burden on this Honorable Court and requests compassion to his situation, mental health, and naivety.  Please dismiss this action.

Attached to the motion is the declaration of Richard McBee which states:

1)   I have been in the cell next to I/M Van Noy for a month and a half and have got to know him well.  Van Noy isn't very educated and seems to have mental illnesses.

2)   I/M Jeremy Pinson comes down to the Law Library every day which is situated across from I/M Van Noy's cell, and he sends him documents to copy and file, to further inmate Pinson's own agenda.

3)    I am tired of witnessing I/M Pinson manipulate I/M Van Noy into doing his bidding in his (Pinson's) war against this Administration.

4)   I have witnessed I/M Pinson do the same thing to several other less educated inmates such as Leroy Bohl and I/M Gambina.  I/M Pinson is a manipulative individual whom all day does nothing but invent ways to create chaos and havoc.

5)   I/M Pinson is using inmates on this range to file remedies and motions in court to simply create and manufacture chaos because that's what he does.

33

6)   I/M Pinson has tried to use me and manipulate me to file bogus documents in court in the past.   I refused.   I have never filed frivolous court filings.

7)   I wish you'd contact the Warden and have I/M Pinson moved away from this range.   He's nothing but trouble.

8)   I have known I/M Pinson for 9 months and he brags to me about filing bogus law-suits and using other inmates because he tries to impress me.

9)   If needed I will testify against I/M Pinson in any proceedings.

Also attached to the motion are papers (motions and declarations) containing this case number which are written in Mr. Pinson's handwriting.[4]   The case was dismissed without prejudice.

Civil Action No. 14-cv-00285-BNB:   Mr. Pinson filed a Prisoner Complaint alleging that eleven defendants withheld his food in retaliation for filing lawsuits against BOP staff.   The district judge denied Mr. Pinson's motion to proceed *in forma pauperis* and addressed Mr. Pinson's abusive litigation history and failure to exhaust administrative remedies.

Civil Action No. 14-cv-00410-BNB:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging five disciplinary proceedings.   The application is pending.

Civil Action No. 14-cv-00423-BNB:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging five disciplinary proceedings.   The application is pending.

---

[4]As a result of Mr. Pinson's voluminous filings, the court is familiar with his handwriting.

Civil Action No. 14-cv-00475-BNB:   Mr. Pinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging two disciplinary proceedings.  The application is pending.

Civil Action No. 14-cv-00645-BNB:   Mr. Pinson filed a Prisoner Complaint alleging that four defendants denied him treatment for a "painful dental infection."  The district judge denied Mr. Pinson's motion to proceed *in forma pauperis* and addressed Mr. Pinson's abusive litigation history and failure to exhaust administrative remedies.

### Recommended Filing Restrictions

The Tenth Circuit Court of Appeals has stated:

> Litigiousness alone will not support an injunction restricting filing activities.  However, injunctions are proper where the litigant's abusive and lengthy history is properly set forth.  Some of the factors relevant in determining whether a litigant's future access to the courts should be restricted include: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing litigation, e.g. does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.  Ultimately, the question the courts must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

United States v. Kettler, 934 F.2d 326, 1991 WL 94457 at *6 (10th Cir. June 3, 1991) (unpublished opinion) (internal quotations and citations omitted).

Mr. Pinson's mechanistic (and meritless) challenges to his disciplinary proceedings, his voluntary dismissal of numerous cases, duplicative lawsuits, and malicious civil rights actions have strained the defendants and the court.  Most of these cases have required filings by the

defendants, and all of them have required court action.  Indeed, Mr. Pinson's voluminous filings have strained the resources of this court to the point where it is spending a vastly disproportionate time on them at the expense of other, non-abusive litigants.  Moreover, Mr. Pinson's willingness to lie to the court and his practice of filing actions on behalf of other inmates without their consent or knowledge, or through coercion, are unconscionable.[5]

Mr. Pinson has a longstanding history of abusive litigation behavior in this district and others.  Because the filing restrictions imposed on Mr. Pinson under 28 U.S.C. § 1915(g) have not deterred his abusive behavior, more stringent restrictions must be imposed.  This should come as no surprise to Mr. Pinson because the court has repeatedly warned him that his abusive filing behavior could result in additional filing restrictions.

I am aware that Mr. Pinson may suffer mental illness.  See United States v. Pinson, 542 F.3d 822 (10th Cir. 2008) (discussing in detail the evidence regarding Mr. Pinson's mental health and affirming the district court's conviction and upward variance).  That condition cannot excuse his relentless abusive filings.  The court simply cannot bear the brunt of Mr. Pinson's abusive behavior.[6]

---

[5]I have no reason to doubt the veracity of the inmates who have accused Mr. Pinson of filing papers on their behalf without their consent or knowledge or coercing them into filing lawsuits.  Those inmates have little to gain from exposing Mr. Pinson.  To the contrary, they are likely inviting more abuse by Mr. Pinson.

[6]Mr. Pinson's need for treatment of mental illness, if any, is being addressed in Civil Action No. 12-cv-1570-RPM-MEH, a lawsuit brought by counsel seeking declaratory and injunctive relief regarding BOP compliance with policies on the treatment of mentally ill prisoners.  On March 11, 2014, the court granted Mr. Pinson's request to excuse counsel and represent himself in that case.

In summary, Mr. Pinson has strained this court's resources with his frivolous, malicious, and abusive *pro se* filings. Based on Mr. Pinson's pattern of manifestly abusive litigation activity, I recommend the following filing restrictions:[7]

1.   Mr. Pinson shall not file in this court any new (a) prisoner complaints, or (b) applications for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 which challenge disciplinary proceedings or attempt to raise claims regarding conditions of confinement, unless represented by a licensed attorney admitted to practice in the District of Colorado or unless he has obtained permission from the court to proceed *pro se*. This includes actions where Mr. Pinson is proceeding as a co-plaintiff or a co-applicant.

In order to obtain permission to proceed *pro se*, Mr. Pinson must:

a.   File with the Clerk of the Court a motion titled "Motion Pursuant to Court Order Seeking Leave to File a *Pro Se* Action" requesting leave to file a *pro se* case;

b.   Attach to the motion a copy of the injunction which imposes these recommended filing restrictions;

c.   Include in the motion a list of all lawsuits currently pending or previously filed with this court and any other federal or state court in which Mr. Pinson was or is a party, including the case name, number, and citation (if applicable) of, and his involvement in, each case and the current status or disposition of each case;

---

[7]See Smith v. Anderson, Civil Action No. 09-cv-01018-PAB, 2009 WL 4035902, at *4-5 (D. Colo. November 19, 2009) (setting forth filing restrictions); Smith v. Krieger, 389 Fed. Appx. 789, 798-800, 2010 WL 2912186, at *7-8 (10th Cir. July 27, 2010) (approving the restrictions imposed in Smith v. Anderson). See also Werner v. State of Utah, 32 F.3d 1446, 1449 (10th Cir. 1994).

    d.   Identify in the motion the legal issues raised in the new case; whether the issues have been raised in other proceedings in this court or any other court; and, if so, the case number and docket number where the issues were raised;

    e.   Include a statement advising the court whether any defendant to the lawsuit was a party to, or was in any way involved in, any prior lawsuit involving Plaintiff and, if so, in what capacity;

    f.   Attach to the motion a notarized affidavit, in proper legal form, which certifies that the legal arguments being raised are not frivolous or made in bad faith; are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; have never before been raised by him and disposed of by any federal or state court; and the case is not being filed for any improper purpose; and

    g.   Attach to the motion a copy of the complaint or application sought to be filed which must comply with the Federal Rules of Civil Procedure and the local rules of this court.

    2.   Mr. Pinson shall not file any motions or other papers pertaining to the motion or the complaint or application unless directed to do so by the court.

    3.   Mr. Pinson shall not have more than one "Motion Pursuant to Court Order Seeking Leave to File a *Pro Se* Action" pending at a time.  In no event shall Mr. Pinson submit more than one motion per month.

    4.   The filing restrictions shall not interfere in any way with actions, orders, or judgments of any federal court involving Mr. Pinson which predate the filing restrictions.

    5.   This recommendation serves as "notice and an opportunity to oppose the court's order before it is implemented" as required by Tripati, 878 F.2d at 354.

## Conclusion

I respectfully RECOMMEND that filing restrictions be imposed on Mr. Pinson consistent with this Recommendation.[8]

Dated March 24, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[8]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).